A. NEWMAN, *as County Clerk, etc.*, v. W. F. LAKE.

No. 14,068.  (79 Pac. 675.)

SYLLABUS BY THE COURT.

1. PRACTICE, SUPREME COURT—*Right to a Review Not Lost.* Where a party to an action is required by the order of a court to do a series of like, but disconnected acts, the performance of a portion only of such acts will not be such a compliance with the order as will preclude the prosecution of a proceeding in error to reverse it.

2. INTOXICATING LIQUORS—*Power to Revoke Permit—Statute Construed.* It is provided in section 2452 of the General Statutes of

1901 that a probate judge may grant a permit to a druggist to sell intoxicating liquors for certain purposes; that such judge "may at any time in his discretion revoke such permit." It is further provided in the same section that if at any time there shall be filed with the probate judge a petition containing certain specified charges against a druggist holding a permit and signed by a certain number of men and women and duly verified, requesting that such permit be canceled, the probate judge shall, after notice, consider the question of such cancelation, and shall cancel the same if upon such hearing he shall find that such druggist is not in good faith carrying out the provisions of the act. *Held:* (1) That there is no such inconsistency between these two provisions that both cannot stand; (2) that under the first provision a probate judge may lawfully act upon his own initiation or at the suggestion of another; (3) that under the second provision he may be compelled to act by the filing of the specified petition.

3. STATUTORY CONSTRUCTION—*Repeals by Implication.* The courts cannot say that one statute repeals another statute by implication, or that one part of a section of a statute repeals another part of the same section, unless they are so repugnant to each other that under no circumstances can both be given force and effect.

4. INTOXICATING LIQUORS—*Valid Act—Case Followed.* The constitional rights of a person are not violated by denying him a permit to sell intoxicating liquors under the provisions of the statutes of Kansas, or by canceling such permit after it has been granted. The case of *The State v. Durein, ante,* p. 1, 78 Pac. 152, followed.

Error from Shawnee district court; Z. T. HAZEN, judge. Opinion filed February 11, 1905. Reversed.

*Redden, McKeever & Gilluly,* for plaintiff in error.

*G. C. Clemens,* for defendant in error.

The opinion of the court was delivered by

CUNNINGHAM, J. : This was an action of mandamus, brought by the defendant in error, in the district court of Shawnee county, to compel the plaintiff in error, who is county clerk of said county, to issue to the defendant in error books of affidavits for the use

54—70 KAN.

of druggists, as provided in section 1 of chapter 339, Laws of 1903. The alternative writ set out the following facts : Lake was a citizen of the state of Kansas, and was, and had been for several years last past, a registered pharmacist, lawfully and in good faith engaged personally in the business of a druggist in the second ward of the city of Topeka, in Shawnee county, as a proprietor of a drug-store there being conducted, and having in his said business, exclusive of intoxicating liquors and fixtures, a stock of drugs of the value of more than $1000. He was eligible to receive a permit as a druggist under the laws of Kansas, and on the 10th day of August, 1903, there was granted to him, as such druggist, by the probate court of Shawnee county, a druggist's permit in due form to sell intoxicating liquors for medical, mechanical and scientific purposes, for the period of one year from that date. He qualified as provided by law, and had ever since that time received from the county clerk books of numbered blank affidavits in series of 100 each, as provided by law, to be used, made and sworn to by those who wished to purchase from him intoxicating liquors for the excepted purposes. On the 1st day of February, 1904, the county clerk, after demand upon him therefor, the cost thereof being tendered, refused to deliver another book of blank affidavits to the petitioner. The only excuse which the county clerk had for such refusal was that on the 25th of January, 1904, the probate judge had revoked and canceled the permit theretofore issued to Lake. Such action was taken by the judge without there being presented to him a petition signed by twenty-five men and twenty-five women residing in the ward where Lake was doing business. It was claimed that the order of revocation was void and

offered no excuse for the county clerk's refusal, for the following reasons :

"1. That said proceeding was unauthorized by any statute of the state of Kansas, the probate judge having no jurisdiction or power to act in such matter except upon the verified petition of twenty-five reputable men and twenty-five reputable women resident in the ward where the business is carried on.

"2. That if the statute authorizing the cancelation of druggists' permits be not so construed, so that said statute vests in said probate judge arbitrary power to cancel and revoke such permits of his own motion and for any reason he may deem proper, notice and a hearing being only a concession personally accorded by him, then said statute is void because in conflict with the fourteenth amendment to the constitution of the United States, as depriving druggists of their property and their liberty to carry on a lawful business which is not a franchise, without due process of law, and as depriving the persons affected by said statute the equal protection of the laws, and as abridging the privileges and immunities of citizens of the United States, said W. F. Lake being such a citizen."

An answer to this alternative writ admitted that Lake was a registered pharmacist and engaged personally in the business of a druggist at the place which he designated, and had the amount of stock of drugs as alleged, and that he was eligible to have a permit to sell intoxicating liquors under the laws of Kansas ; that such permit had been issued to him as alleged, and that the defendant had theretofore issued as demanded books of blank affidavits as provided by law. It further admitted that about the 1st day of February, 1904, the defendant, upon the demand of Lake, refused, and still refuses, to issue other books of blank affidavits to him, and as a justification for such refusal he alleged that on the 25th of January, 1904, the probate judge of Shawnee county revoked the permit

which Lake had theretofore held by the entry of a proper order and decree to that effect; that such order and decree had been made by the judge upon a verified petition presented to him and signed by one McCullum, and after a due and proper hearing before him had upon notice to Lake; that Lake appeared in said proceeding and resisted the making of the order; that the refusal to comply with the request of Lake for the issuance of blank affidavits was in the discharge of his duty, as he understood his duty to be, and in accordance with the law, as he understood the law to be, to wit, that when a permit that has once been issued by a probate judge of the county has subsequently by such judge been revoked, then and thereafter, while such order of revocation stands, the county clerk has no right to deliver to the person whose permit had thus been revoked books of numbered blank affidavits, and that he has no right to issue such books to any one except those holding an unrevoked and uncanceled permit.

Upon the hearing, the district court made the alternative writ peremptory, and directed the county clerk to issue thereafter the books of blank affidavits, as provided by law. To reverse this order, the plaintiff in error prosecutes this proceeding.

The defendant in error moves to dismiss the petition because the order of the district court has been complied with by the payment of the costs and the issuance of the books of blank affidavits in series as required up to the present time. It is shown by the affidavits that the costs were paid by Lake, with the knowledge and consent of the plaintiff in error; and that the order of the court relative to the issuance of the blank affidavits has been complied with from time to time upon the demand of Lake, and that the

Newman v. Lake.

plaintiff in error will be compelled to furnish the same from month to month until the expiration of Lake's permit, in August, 1904. We do not think that this is such a showing of compliance with the court's order as to make the questions raised merely speculative, or moot. Certainly the payment of the costs by the defendant in error himself, even by and with the consent of the plaintiff in error, would not have this effect; nor would the doing of a number of a continued series of required acts, less than the entire number, have this effect. The order of the court seems to have contemplated the performance of a series of like, yet disassociated, acts during a given term, and the questions raised affect the performance of these required acts during the remainder of the unexpired term as vitally as before the order had in part been complied with. So that the facts here shown do not present a case where an order sought to be reversed has been fully performed.

We turn now to a discussion of the meritorious matters involved. It is contended that the order of the probate judge made January 25, 1904, revoking Lake's permit, was void because made without a petition therefor; that a petition signed by twenty-five men and twenty-five women, residents of the ward, was essential to give jurisdiction to the probate judge to act. The solution of this question calls for an examination of the statutes. Prior to 1885 no provision is found in the statute for the revocation of a permit once granted. By the Laws of that year, section 1 of chapter 149, there was committed to the probate judge the right, at any time, in his discretion, to revoke such permit. By chapter 165 of the Laws of 1887 the law was still further amended. The absolute discretion in the matter of revocation was left in this section

as found in the Laws of 1885, and as it remains in the present law. Added thereto was the provision that if at any time there should be filed with the probate judge a petition containing certain allegations therein specified—that a druggist, naming him, holding a permit was not in good faith conforming to the provisions of the act, signed by twenty-five reputable men and twenty-five reputable women, residents of the township, city or ward where the druggist was carrying on his business and requesting a cancelation of the druggist's permit—the probate judge should proceed after due citation to inquire into the allegations of this petition, and if found true should revoke the permit.

It is the contention of the defendant in error that this latter provision served to take away from the probate judge the power to revoke a permit at his discretion at any time; that this provision and the one requiring him to proceed upon petition are so inconsistent, each with the other, that they cannot stand together, and that the only way in which a permit can be legally canceled is by instituting proceedings therefor by a petition signed by the requisite number of men and women, as above indicated. We might further remark that after the adding of the provision relative to the filing of the petition authority is given for an appeal from the decision of the probate judge, and then follows a specific provision : "This shall not prevent the probate judge from canceling any permit at any time on his own motion or otherwise."

We are of the opinion that there is no conflict between the provision granting an absolute discretion to the probate judge to revoke a permit at any time, and the other provision requiring him to investigate

the propriety of such revocation upon the presentation of the petition mentioned ; at least, no such fundamental disagreement as necessarily to destroy the efficacy of either provision.    Both may stand ; both may find scope for operation under proper circumstances.    A probate judge may become informed of the breach of the law on the part of a druggist holding a permit from many sources.    He may choose to act upon his own motion upon the information thus derived.    Such action is authorized by the provision contained in the body of the law.    On the other hand, he may not be possessed of any information concerning the infraction of the law by the druggist, or being informed concerning such infraction may not choose to act, but when the petition which is provided for, as above indicated, is presented to him he is thereupon compelled to act, and, acting for or against the revocation of the permit, there may be an appeal.

It is a matter of the commonest knowledge that the prohibition of the illegal sale of intoxicating liquors has come to be the settled policy of the state ; that the every act of the lawmakers for the past quarter of a century has been toward the strengthening of the law rather than its weakening, and we may well conceive that the purpose of the act in question was to compel action on the part of an unwilling · probate judge rather than to take away discretion from a willing one.    We do not deny that two provisions of a statute, even though found in the same section, might be so inconsistent that the one would be made inoperative by the other, but certainly the rule in such a case could not be less stringent than the rule as to repeals by implication, to wit, that the implication must be a necessary one, and that the two provisions could in no form or place operate together.    If such were the

case here we might well doubt whether the last provision — the one requiring a petition — was not inoperative rather than the first, because there is found the explicit proviso that the requirements in the matter of a petition should not be so construed as to prevent the probate judge from canceling a permit on his own motion. It, however, is not our duty to inquire whether the different provisions of the law are logical, sensible, rational, or even harmonious, but whether they are so repugnant that both cannot stand. If, for any purpose or under any circumstances, their provisions can both find scope for action we must give efficacy to both.

"If the provisions of the old act and the new can be reconciled by any possible mode of interpretation or construction, if the old act and the new can both be given force and effect, according to their terms and under any circumstances, then it should never be held that one overturns and destroys the other, but both should be given full force and effect." (*Stephens v. Ballon*, 27 Kan. 594, 601; *Hornaday v. The State*, 63 id. 499, 65 Pac. 656; *Noecker v. Noecker*, 66 id. 347, 71 Pac. 815.)

Counsel urges that power to do a thing cannot be granted by a proviso. This is very true, but counsel overlook the fact that this discretionary power is not granted to the probate judge by the quoted proviso; it is found in the body of the act. The quoted proviso only serves to explain and limit the operation of the provisions of that portion of the act providing for a petition and to the action of the probate judge thereunder. Counsel argues with much vigor that if the clause giving the probate judge discretion shall stand, a conflict might arise between him and the district court; that when an order of the probate judge had been reversed on appeal, the probate judge might in-

Newman v. Lake.

voke his discretionary power and again interfere.   The possibility that such a conflict might arise affords no reason to declare so plain a provision of the statute inoperative ; a sufficient answer would be that it might not occur.

We are clearly of the opinion that a probate judge has jurisdiction under the law as it now stands to revoke a druggist's permit at any time in his discretion, and if so, he may do this upon the petition of one or more petitioners, as was done in this case ; that the order of the probate judge of Shawnee county revoking Lake's permit was in perfect accord with the law and binding upon the county clerk, so that he could not legally issue to Lake the blank book of affidavits.

Counsel further contends that Lake, being engaged in the legitimate business of selling liquors for the excepted constitutional purposes, cannot be denied a permit so to do, or having such permit cannot be deprived of it ; that as a matter of right he may carry on any legitimate and lawful business uninterfered with by the arbitrary discretion of any one, and that the law, as we have hereinbefore construed it to be, is therefore unconstitutional.   This contention has heretofore been decided by this court adversely to this view. (*The State v. Durein, ante,* p. 1, 78 Pac. 152.)

We are of the opinion that the action of the probate judge, in revoking the permit held by Lake, was in all respects regular and fully authorized by law.   This being so, Lake had no right to be furnished with the books of blank affidavits by the county clerk, and hence the order and decree of the district court directing the county clerk to do so were erroneous, and its action is reversed.

All the Justices concurring.