State *v.* Bailey.

---

### THE STATE *v.* BAILEY.

[No. 19,370.    Filed October 29, 1901.]

SCHOOLS.—*Compulsory Education.*—*Truancy.*—*Constitutional Law.* —*Statutes.*—The title of the act of 1899 (Acts 1899, p. 547), "An act entitled an act amending an act concerning the education of children, approved March 8, 1897, and declaring an emergency," the act defining the duties of parents and guardians concerning the attendance of children at school, providing for the appointment of a truant officer and the definition of a misdemeanor, is not violative of the provision of §19, article 4 of the Constitution, that the subject of an act shall be expressed in the title. *pp. 326-329.*

State *v.* Bailey.

Schools.—*Compulsory Education.—Truancy.—Constitutional Law.
—Statutes.*—The act of 1899 (Acts 1899, p. 547), entitled "An act entitled an act amending an act concerning the education of children, approved March 8, 1897, and declaring an emergency," indicates with sufficient precision, within the meaning of §21, article 4 of the Constitution, that it is an amendment of the act of March 8, 1897, concerning the education of children. *p. 329.*

Same.—*Compulsory Education.*—The act of 1899 (Acts 1899, p. 547), requiring every parent, guardian or other person within the State having control or charge of any child or children between the ages of six and fourteen years to send such child or children to school each year for a period not less than that of the public schools of the school corporation where the child or children reside, is not an unauthorized invasion of the natural right of the parent to the custody and control of his child. *pp. 329, 330.*

Same.— *Criminal Law.— Affidavit.— Compulsory Education.* — An affidavit charging defendant with having neglected, omitted and refused to send his child to school, in violation of the compulsory education law (Acts 1899, p. 547), is not defective because the word "unlawful" was not used therein, where the facts averred sufficiently show that the act of defendant was unlawful. *p. 331.*

From Jay Circuit Court; *J. M. Smith,* Judge.

Sheridan Bailey was convicted before a justice of the peace for violation of the compulsory education law. From a judgment of the circuit court quashing the affidavit, the State appeals. *Reversed.*

*W. L. Taylor,* Attorney-General, *C. C. Hadley, Merrill Moores, D. E. Griner* and *Rowland Evans,* for State.

*F. H. Snyder* and *G. W. Bergman,* for appellee.

Dowling, J.—The appellee was charged upon affidavit before a justice of the peace with having neglected, omitted and refused to send his child, Vory Bailey, to school, in violation of the provisions of the compulsory education law of this State, of March 8, 1897 (Acts 1897, p. 248), as amended by the act of March 6, 1899 (Acts 1899, p. 547). He was convicted before the justice, and, upon an appeal from that judgment to the circuit court, the affidavit was quashed. The State appeals. . ، :

The constitutionality of the act of March 6, 1899, is

assailed by the appellee upon the following grounds: (1) Because it is in conflict with §19, article 4, of the Constitution of Indiana; (2) because it is in conflict with §21, article 4, of the Constitution; (3) because it invades the natural right of man to govern and control his own children.

The additional point is made by counsel for the appellee that the facts stated in the affidavit are not sufficient to constitute a public offense.

The title of the act of March 6, 1899, is: "An act entitled an act amending an act concerning the education of children, approved March 8, 1897, and declaring an emergency." It is contended that this title does not conform to that provision of the Constitution which prescribes that every act shall embrace but one subject, and matters properly connected therewith, and that such subject shall be expressed in the title. It is also objected that the title of the act is so vague and uncertain as to render it nugatory. It is said that the subject of the act is declared to be the education of children, but that the provisions of the statute relate to subjects of an entirely different nature, such as the duties of parents and guardians concerning the attendance of children at school, the creation of an office, the appointment of a truant officer, and the definition of a misdemeanor.

The law of the case seems to be well settled by the decisions of this court. Such a title as "An act to promote the general welfare of the State;" or "an act to promote good morals," would give no indication of the character of the subject of the statute, and, therefore, would fail to meet the requirement that the subject of the act must be expressed in the title. *Indiana, etc., R. Co.* v. *Potts,* 7 Ind. 681; *Gillispie* v. *State,* 9 Ind. 380; *Henderson* v. *London, etc., Ins. Co.,* 135 Ind. 23, 20 L. R. A. 827, 41 Am. St. 410; *State* v. *Gerhardt,* 145 Ind. 439, 33 L. R. A. 313; *Bright* v. *McCullough,* 27 Ind. 223.

But the title, "An act concerning drainage", properly em-

braces legislation authorizing the appointment of a board of drainage commissioners. It is sufficient also to include provisions for the making and collecting of assessments upon the lands benefited by the work, and the recovery of attorney's fees. *Ross* v. *Davis,* 97 Ind. 79; *Wishmier* v. *State,* 97 Ind. 160.

The title, "An act to regulate the sale of intoxicating liquors", was held a sufficient expression of the subject of the act, and to authorize provisions prohibiting the sale of liquor, and imposing penalties for violation of the statute. *Williams* v. *State,* 48 Ind. 306; *Kane* v. *State,* 78 Ind. 103.

"An act defining felonies, and prescribing punishment therefor", and "An act defining certain felonies, and prescribing punishment therefor", were held sufficiently certain to embrace all felonies mentioned in them with the punishments for the same. *Peachee* v. *State,* 63 Ind. 399.

The title of a statute was: "An act to provide for the incorporation of railroad companies"; held a sufficient statement of the subject to embrace a provision for the individual liability of the stockholders. *Shipley* v. *City of Terre Haute,* 74 Ind. 297.

"An act concerning bank officers, brokers, *etc.,* receiving deposits after insolvency, repealing all laws in conflict herewith" was decided to be "comprehensive enough, omitting the *'etc.'* to express the subject of the act." *State* v. *Arnold,* 140 Ind. 628.

*Bright* v. *McCullough,* 27 Ind. 223, contains a luminous and forcible explanation of the meaning of §19 of article 4 of the Constitution: "The Constitution does not assume to divide the general scope of legislation, and classify the parts under particular heads or subjects, but, of necessity, has left that power to be exercised by the legislature, as it, in its wisdom and discretion, shall deem proper. The Constitution assumes that different subjects of legislation do exist, and requires that each act shall embrace but one subject, and matters properly connected therewith, which sub-

ject shall be expressed in the title. The purposes of the provision, in view of the evils intended to be guarded against, can only be effected by requiring that the subject expressed should be reasonably specific, or, in other words, should be such as to indicate some particular branch of legislation, as a head under which the particular provisions of the act might reasonably be looked for. With this restriction, the subject of an act may be enlarged or restricted at the will of the legislature, and the subject must be determined by reference to the language used in the title. It sometimes occurs that the draughtsman, intending to provide a title sufficiently comprehensive to cover various provisions, all, however, relating to a common subject, instead of selecting a subject which is sufficiently comprehensive to embrace all the provisions of the act, and expressing it in general terms, attempts to accomplish the desired object by stating in the title, in detail, the character or purpose of the various provisions of sections, thereby often limiting the subject· expressed to the particular matters thus specified. But it should be borne in mind that the Constitution only requires that a proper subject of legislation should be expressed in the title, and not the particular features or details of the law. If these relate to the subject expressed, it satisfies the constitutional provisions. The words, 'an act concerning highways,' would express but a single subject, and yet would constitute a comprehensive title, under which almost any desired provision relating to highways might be enacted, and every effort to express in the title the details of the act would only tend to limit the subject." See, also, *Gustavel* v. *State,* 153 Ind. 613; *Maule Coal Co.* v. *Partenheimer,* 155 Ind. 100; *Clarke* v. *Darr,* 156 Ind. 692.

We think the title of the statute in question specific enough to guard against the evils intended to be prevented by the Constitution. It sufficiently indicates "some particular branch of legislation as a head under which the particular provisions of the act might reasonably be looked

for." The subject of the act, as expressed in the title, is "the education of children." Is this any less specific than "drainage", or, "highways"? Is it not as definite as "to regulate the sale of intoxicating liquors" or, "to provide for the organization of railroad companies"? Yet, each of these has been held a sufficient statement of the subject of the act to which it applied.

The validity of the act of March 6, 1899, is denied, also, because of its supposed conflict with §21 of article 4 of the Constitution, upon the ground that its title does not refer to the title of the act of March 8, 1897, which it purports to amend. The grammatical construction of the title is awkward, and inaccurate, but it indicates with sufficient precision that the act of 1899 is an amendment of "An act concerning the education of children," which was the full title of the act of March 8, 1897. And the statute amended is further identified by reference to the date of its approval. The rule in such cases is that an act of the legislature is not to be held void because of trivial and unimportant defects in its title. If any reference to the title of the act amended was necessary—as was held in *Feibleman* v. *State,* 98 Ind. 516—this requirement was sufficiently complied with in the title of the amendatory act of 1899.

The next question presented is, whether the statute is an unauthorized invasion of the natural rights of the appellee as a parent.

The natural rights of a parent to the custody and control of his infant child are subordinate to the power of the State, and may be restricted and regulated by municipal laws. One of the most important natural duties of the parent is his obligation to educate his child, and this duty he owes not to the child only, but to the commonwealth. If he neglects to perform it, or wilfully refuses to do so, he may be coerced by law to execute such civil obligation. The welfare of the child, and the best interests of society require that the State shall exert its sovereign authority to secure

to the child the opportunity to acquire an education. Statutes making it compulsory upon the parent, guardian, or other person having the custody and control of children to send them to public or private schools for longer or shorter periods, during certain years of the life of such children, have not only been upheld as strictly within the constitutional power of the legislature, but have generally been regarded as necessary to carry out the express purposes of the Constitution itself. §§1-8, article 8, Constitution of Indiana; Hocheimer Custody of Infants, §79; Fraser's Law of Parent and Child, 77; *Bennett* v. *Bennett,* 13 N. J. Eq. 114; *English* v. *English,* 32 N. J. Eq. 738; *Matter of Bort,* 25 Kan. 308, 37 Am. Rep. 255; *People* v. *Ewer,* 141 N. Y. 129, 36 N. E. 4, 25 L. R. A. 794, 38 Am. St. 788; *Sheers* v. *Stein,* 75 Wis. 44, 43 N. W. 728, 5 L. R. A. 781; *Lally* v. *Henry,* 85 Iowa 49, 51 N. W. 1155, 16 L. R. A. 681.

"The matter of education is deemed a legitimate function of the State, and with us is imposed upon the legislature as a duty by imperative provisions of the Constitution. * * * The subject has always been regarded as within the purview of legislative authority. How far this interference should extend is a question, not of constitutional power for the courts, but of expediency and propriety, which it is the sole province of the legislature to determine. The judiciary has no authority to interfere with this exercise of legislative judgment; and to do so would be to invade the province which by the Constitution is assigned exclusively to the lawmaking power." *State* v. *Clottu,* 33 Ind. 409, 411.

To carry out the enlightened and comprehensive system of education enjoined by the Constitution of this State, a vast fund, dedicated exclusively to this purpose, has been set apart. Revenues to the amount of more than $2,000,000 annually are distributed among the school corporations of the State. No parent can be said to have the right to deprive his child of the advantages so provided, and to defeat the purpose of such munificent appropriations. . . .

In the last place, it is objected that the affidavit is insufficient because it does not allege that the appellee "unlawfully" neglected, etc., to send his child to school. The facts averred sufficiently show that the act of the appellee was unlawful. All of the exceptions and legal excuses named in the statute are negatived in the affidavit, and the conduct of the appellee, as described in that instrument, could not have been lawful. The rule applicable here is well stated in Wharton's Crim. Pl. & Pr. (8th ed.) §269, as follows: "The phrase 'unlawful' is in no case essential, unless it be a part of the description of the offense as defined by some statute; for if the fact, as stated, be illegal, it would be superfluous to allege it to be unlawful; if the fact stated be legal, the word unlawful cannot render it indictable."

The affidavit sufficiently charged a public offense.

For the error of the court in sustaining the appellee's motion to quash the affidavit, the judgment is reversed.